130 Nev., Advance Opinion 68

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| BRADY, VORWERCK, RYDER & CASPINO, Appellant, vs. NEW ALBERTSON'S, INC., Respondent. | No. 61767 **FILED** AUG 0 7 2014 TRACIE K. LINDEMAN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |

Certified question under NRAP 5 concerning whether the statute of limitations in NRS 11.207, as revised by the Nevada Legislature in 1997, is tolled against an action for attorney malpractice, pending the outcome of the underlying suit in which the malpractice allegedly occurred.[1] United States District Court of the District of Nevada; Gloria M. Navarro, Judge.

*Question answered.*

Lemons, Grundy & Eisenberg and Robert L. Eisenberg, Reno; Lipson, Neilson, Cole, Seltzer & Garin, P.C., and Joseph Garin and Kaleb D. Anderson, Las Vegas,
for Appellant.

Prince & Keating, LLP, and Dennis M. Prince and Eric N. Tran, Las Vegas,
for Respondent.

---

[1]The clerk of this court shall amend the caption on this docket to conform with the caption on this opinion.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, SAITTA, J.:

Before it was amended in 1997, NRS 11.207(1) stated that an attorney malpractice action for damages may not "be commenced more than 4 years after the plaintiff sustains damage and discovers or through the use of reasonable diligence should have discovered the material facts which constitute the cause of action." NRS 11.207(1) (1981), *amended by* 1997 Nev. Stat., ch. 184, § 2, at 478. To the pre-1997 version of NRS 11.207(1), Nevada caselaw applied the litigation malpractice tolling rule, which delays the commencement of a malpractice claim's statute of limitations until the end of the litigation in which the malpractice occurred. *See, e.g., Clark v. Robison*, 113 Nev. 949, 951, 944 P.2d 788, 789-90 (1997). Since being amended in 1997,[2] NRS 11.207(1) has imposed on attorney malpractice actions a four-year limitations period that begins "after the plaintiff sustains damage," and a two-year statute of limitations that starts "after the plaintiff discovers or through the use of reasonable diligence should have discovered the material facts which constitute the cause of action, whichever occurs earlier." As to NRS 11.207(1), the United States District Court for the District of Nevada has certified the following question to this court: "Whether the statute of limitations in NRS 11.207, as revised by the Nevada [L]egislature in 1997, is tolled

_____

[2]1997 Nev. Stat., ch. 184, § 2, at 478.

against a cause of action for attorney malpractice pending the outcome of the underlying lawsuit in which the malpractice allegedly occurred."

With respect to the two-year statute of limitations under NRS 11.207(1), we answer this question in the affirmative.[3] After 1997, the amended statute retained the discovery rule language to which the litigation malpractice tolling rule has been applied in Nevada caselaw. *See Clark*, 113 Nev. at 951, 944 P.2d at 789-90 (applying the litigation malpractice tolling rule to the entirety of NRS 11.207, including the discovery rule language). And Nevada caselaw, while not explicitly addressing whether the tolling rule survived the statutory amendments, has continued to implicitly recognize the rule as good law under the amended statute. *See Moon v. McDonald, Carano & Wilson L.L.P.*, 129 Nev. ___, ___, 306 P.3d 406, 407, 409 (2013) (indicating that the litigation malpractice tolling rule applies to the current version of NRS 11.207(1)); *Hewitt v. Allen*, 118 Nev. 216, 221, 43 P.3d 345, 347-48 (2002) (stating, albeit without citing to NRS 11.207(1), that the litigation malpractice tolling rule delays the accrual of a malpractice action "until the plaintiff knows, or should know, all the facts relevant to the foregoing elements and damage has been sustained" and that damages do not accrue "until the underlying legal action has been resolved"). Moreover, we maintain the rule because it permits the final resolution of the damages incurred during the litigation, including any changes on the appeal, thereby preventing judicial resources from being spent on a claim for damages that

---

[3]We do not discuss whether NRS 11.207(1)'s four-year time limitation may be tolled, as that time limitation had not expired when the malpractice action at issue was filed and thus it need not be addressed.

may be reduced or cured during litigation. *See Hewitt*, 118 Nev. at 221, 43 P.3d at 348 (providing, in the context of an appeal from the litigation in which the malpractice occurred, that the litigation malpractice tolling rule accounts for the possibility that the damages may disappear upon resolution of the appeal).

## FACTS AND PROCEDURAL HISTORY

The federal court's certification order concerns purported litigation malpractice. This alleged malpractice occurred in the context of an attorney-client relationship between the appellant law firm Brady, Vorwerck, Ryder & Caspino (BVRC), its former and now deceased attorney W. Dennis Richardson, and their client Albertson's, Inc., which later became New Albertson's, Inc.[4]

---

[4]In reviewing the facts and procedure, we rely on the federal district court's articulation of that information in its certified question, but we do so with one exception. *See In re Fontainebleau Las Vegas Holdings, L.L.C.*, 127 Nev. ___, ___, 267 P.3d 786, 795 (2011) (providing that the answering court in a certified-question proceeding "is bound by the facts . . . in the certification order"). The certification order does not explain why respondent New Albertson's, Inc., and not Albertson's, is a party to the proceeding. For the limited purpose of providing context to the issues that we address in responding to the certified question, we look to the appendix that New Albertson's submitted to this court. *See id.* (providing that an appendix that is submitted in a certified-question proceeding may help give context for the issues but should not be relied on "to contradict the certification order"). In the appendix, New Albertson's complaint before the federal district court explains that New Albertson's acquired Albertson's rights and liabilities. This fact is of no consequence to our analysis, nor is it contested before this court, and we do not discuss it further. But for the purpose of clarity, we use the name "New Albertson's" in reference to both Albertson's and New Albertson's.

*The facts, underlying litigation, and malpractice*

New Albertson's and Farm Road Retail, LLC, entered into an agreement concerning the maintenance of a common area that they shared between them. The agreement provided that Farm Road would "indemnify [New] Albertson's from certain negative legal outcomes resulting from any breach of the [agreement] by Farm Road."[5] A woman fell on a flight of stairs at the New Albertson's location to which the agreement applied. That woman and her husband (the claimants) filed suit against New Albertson's and Farm Road in a Nevada district court to recover the damages that she incurred when she fell. New Albertson's hired BVRC for legal representation, and it assigned its attorney, Richardson, to the case.

New Albertson's denied all liability in an answer to the complaint. It also filed a cross-claim "against Farm Road based on Farm Road's initial refusal to indemnify [New] Albertson's for the . . . [c]omplaint and refusal to accept [New] Albertson's Tender of Defense."

The claimants served New Albertson's with requests for admission. Richardson, the BVRC lawyer, "belatedly served the responses on behalf of [New] Albertson's." Considering that New Albertson's responses were "untimely and allegedly deficient," the claimants "filed a [m]otion to [c]ompel." A discovery commissioner determined that New

---

[5]This and all other quotes within our review of the facts and procedural history come from the federal district court's certification order.

Albertson's responses were "'frivolous and an insult to the court.'" The district court agreed, and it ordered New Albertson's to "re-file the responses," which Richardson did.

After New Albertson's "re-file[d] the responses," the claimants filed a motion for partial summary judgment "on the issue of liability, alleging that the . . . [re-filed] [r]esponses filed by Richardson knowingly violated the [district] court's order." The district court granted the motion, the result of which "established [New] Albertson's liability for the [claimants'] damages." It appears that the district court deemed New Albertson's responses to the requests for admission as admitted because of BVRC and Richardson's discovery violations.

Subsequently, the claimants and New Albertson's entered into a settlement agreement on January 5, 2008. Following that settlement agreement, New Albertson's cross-claim against Farm Road remained. The district court granted summary judgment in favor of Farm Road with respect to that cross-claim. In so doing, the district court concluded in part that New Albertson's claims against Farm Road, including an indemnification claim, were "'not viable . . . because [New] Albertson[']s settlement was the direct result of discovery abuses committed by [New] Albertson[']s.'"

New Albertson's appealed the district court's summary judgment determination to this court. But before this court could reach the appeal's merits, New Albertson's and Farm Road entered into a settlement agreement during a mandatory settlement conference in April 2009. As a result, this court issued an order that dismissed New Albertson's appeal in May 2009.

*The attorney malpractice action before the federal district court*

On January 22, 2010—over two years after New Albertson's settlement with the claimants, but less than two years after New Albertson's settlement with Farm Road and the dismissal of New Albertson's appeal—New Albertson's filed an attorney malpractice suit against BVRC and Richardson in a Nevada district court. At some point, the suit was removed to the United States District Court for the District of Nevada.

After answering the complaint, BVRC filed a motion for summary judgment, wherein it argued that the malpractice action was untimely filed after the expiration of NRS 11.207(1)'s two-year statute of limitations for attorney malpractice actions. BVRC asserted that, at the latest, NRS 11.207's two-year limitation period commenced on January 5, 2008, the date of New Albertson's settlement with the claimants. Accordingly, it contended that New Albertson's attorney malpractice action was untimely because it was filed over two years after that settlement.

The federal district court denied BVRC's motion upon concluding that NRS 11.207(1)'s two-year time limitation did not begin until May 27, 2009, the date that this court dismissed New Albertson's appeal that concerned its cross-claim. It concluded that New Albertson's action against BVRC was therefore timely.

Subsequently, BVRC filed a motion to certify a question to this court regarding NRS 11.207(1). BVRC argued that although this court stated in the past that NRS 11.207(1)'s limitations period does not commence for a malpractice action until the conclusion of the litigation in which the malpractice occurred, this tolling rule, often called the litigation

malpractice tolling rule, existed before the 1997 amendments to NRS 11.207(1). BVRC maintained that the 1997 amendments rendered the litigation malpractice tolling rule obsolete. The federal district court granted the motion and issued an order that certified the question that we now answer.

## DISCUSSION

BVRC contends that the litigation malpractice tolling rule no longer applies to NRS 11.207(1). It suggests that the rule was developed before the Legislature amended NRS 11.207(1) in 1997 and, thus, has no application to the current version of the statute. According to BVRC, the two-year statute of limitations in NRS 11.207(1) begins to run when a claimant has knowledge of any amount of damages and the remaining material facts for an attorney malpractice action, which may occur before the completion of the litigation during which the malpractice occurred. Based on our de novo review of the statutory language and the relevant caselaw, we disagree with BVRC's contentions. *See In re Fontainebleau Las Vegas Holdings, L.L.C.*, 127 Nev. at ___, 267 P.3d at 794-95 (2011) (providing that when responding to a certified question, we only answer the legal questions and leave the federal court to apply the clarified law to the facts before it); *City of Reno v. Reno Gazette-Journal*, 119 Nev. 55, 58, 63 P.3d 1147, 1148 (2003) (stating that issues of statutory interpretation are reviewed de novo); *Banegas v. State Indus. Ins. Sys.*, 117 Nev. 222, 224, 19 P.3d 245, 247 (2001) (providing that "[q]uestions of law are reviewed de novo"); *Meguerditchian v. Smith*, 284 P.3d 658, 661 (Utah Ct. App. 2012) (noting that the interpretation of caselaw is a question of law).

*NRS 11.207(1)'s codification of the discovery rule*

Generally, jurisdictions place time limitations on attorney malpractice actions in the form of statutes of limitation and statutes of repose. *See* 3 Ronald E. Mallen et al., *Legal Malpractice* § 23:1, at 320 (2013). As to a statute of limitations, various tolling theories may delay the start of the time set forth in the statute. They include, but are not limited to: (1) the occurrence rule, which starts the statute of limitations when the lawyer commits the act of malpractice; (2) the continuous representation rule, which starts the statute of limitations when the attorney-client relationship ends; (3) the damage rule, which starts the statute of limitations when the actionable damages occur, although some jurisdictions disagree on how much damage must occur to trigger the statute of limitations; (4) the discovery rule, which starts the statute of limitations when the claimant discovers, or reasonably should have discovered, the material facts for the action, including the damages; and (5) the litigation malpractice tolling rule, which provides that the damages for a malpractice claim do not accrue until the underlying litigation is complete and, thus, a malpractice claim does not accrue and its statute of limitations does not begin to run during a pending appeal of an adverse ruling from the underlying litigation. *See Moon v. McDonald, Carano & Wilson L.L.P.*, 129 Nev. ___, ___, 306 P.3d 406, 407, 409 (2013) (discussing the discovery rule that NRS 11.207(1) codifies and the litigation malpractice tolling rule); 3 Mallen et al., *supra*, § 23:9, at 394-96, § 23:11, at 425, 428-35 (explaining the damage rule, the occurrence rule, and the continuous representation rule). Of these multiple rules, two are at issue

in this matter: (1) the discovery rule that is codified in NRS 11.207(1), and (2) the litigation malpractice tolling rule that appears in Nevada caselaw.[6]

In 1981, the Legislature codified the discovery rule. 1981 Nev. Stat., ch. 501, § 1, at 1023. It appeared in NRS 11.207(1), which stated:

> No action against any . . . attorney . . . to recover damages for malpractice . . . may be commenced more than 4 years after the plaintiff sustains damage and *discovers or through the use of reasonable diligence should have discovered the material facts which constitute the cause of action.*

NRS 11.207(1) (1981) (emphasis added) (amended in 1997). In addition, the Legislature provided that the time limitation for a malpractice action is tolled when the attorney conceals his actionable conduct:

> This time limitation is tolled for any period during which the . . . attorney . . . conceals any act, error or omission upon which the action is founded and which is known or through the use of reasonable diligence should have been known to him.

NRS 11.207(2) (1981) (hereinafter "the concealment tolling rule") (amended in 1997). This version of NRS 11.207 required a claimant to sustain damages in order for the four-year time limitation to start. NRS 11.207(1). But it delayed the start of the four-year limit until the discovery of the necessary facts for an attorney malpractice claim. NRS 11.207(1) (1981) (amended in 1997).

---

[6]While we acknowledge that the continuous representation rule *may* be applicable to this matter, we do not address that theory or its place in Nevada caselaw. We limit our discussion to what is asked within the federal court's certification order, which narrowly concerns whether the litigation malpractice tolling rule still applies to the statute of limitations in NRS 11.207(1).

SUPREME COURT
OF
NEVADA

(O) 1947A

In 1997, the Legislature amended NRS 11.207(1). 1997 Nev. Stat., ch. 184, § 2, at 478. As a result, the statute places four-year and two-year time limitations on an attorney malpractice claim:

> An action against an attorney ... to recover damages for malpractice, whether based on a breach of duty or contract, must be commenced *within 4 years after* the plaintiff sustains damage *or within 2 years after* the plaintiff discovers or through the use of reasonable diligence should have discovered the material facts which constitute the cause of action, *whichever occurs earlier.*

NRS 11.207(1) (emphases added). The first time limitation to expire governs the timeliness of the malpractice action. NRS 11.207(1).

*The discovery rule, the litigation malpractice tolling rule, and the application of the latter to the former in Nevada before NRS 11.207(1) was amended in 1997*

With respect to the discovery rule, the presence of damages partially informs when the statute of limitations begins to run. Various jurisdictions maintain that the accumulation of some, but not necessarily all, damages triggers an attorney malpractice claim's statute of limitations. *See, e.g., Laird v. Blacker*, 828 P.2d 691, 693-96 (Cal. 1992) (identifying that the discovery of any "appreciable" harm, or the fact of a damage, has been held to trigger a malpractice claim's statute of limitations and resolution of an appeal is unnecessary to the determination); *Riemers v. Omdahl*, 687 N.W.2d 445, 449 (N.D. 2004) (noting that some, but not all, incurred damage is necessary for the statute of limitations to start under the discovery rule); *Fritzeen v. Gravel*, 830 A.2d 49, 52, 54 (Vt. 2003) (providing that the discovery of an injury triggers the statute of limitations, even though the extent of the damages

is unsettled). Some of these jurisdictions provide that ongoing litigation, including a pending appeal from the litigation in which the malpractice occurred, does not delay the accrual of the attorney malpractice claim. *See, e.g., Laird*, 828 P.2d at 693-96 (providing that the "focus" of its statute that codifies the discovery rule for a malpractice action "is on discovery of the malpractice and actual injury, not success on appeal or proof of the total amount of monetary damages suffered by the former client" (emphasis omitted)); *Fritzeen*, 830 A.2d at 52, 54 (rejecting the argument that a statute of limitations is not triggered until the damages are finalized after the exhaustion of an appeal).

In contrast, other jurisdictions focus on the end of the litigation during which the malpractice occurred and the finality of the damages for the commencement of the statute of limitations. *See, e.g., Amfac Distribution Corp. v. Miller*, 673 P.2d 795, 796 (Ariz. Ct. App. 1983) ("Where there has been no final adjudication of the client's case in which the malpractice allegedly occurred, the element of injury or damage remains speculative and remote, thereby making premature the cause of action for professional negligence."), *approved as supplemented by* 673 P.2d 792 (Ariz. 1983); *Silvestrone v. Edell*, 721 So. 2d 1173, 1175 & n.2 (Fla. 1998) (concluding that, with respect to the discovery rule, damages must not be speculative but must be final for an attorney malpractice claim's statute of limitations to start, and that finality exists when the time for an appeal has passed or when a pending appeal has been resolved). In such jurisdictions, the end of the litigation in which the malpractice took place, which may include the loss or exhaustion of an appeal, triggers the statute of limitations, because at that point the

damages are solidified and can be ascertained. *See, e.g., Amfac Distribution Corp.*, 673 P.2d at 796; *Silvestrone*, 721 So. 2d at 1175 & n.2.

Nevada caselaw that predates the 1997 amendments to NRS 11.207(1) applied the litigation malpractice tolling rule to the discovery rule for attorney malpractice actions. *See, e.g., Clark v. Robison*, 113 Nev. 949, 951, 944 P.2d 788, 789-90 (1997) (providing, with respect to the entirety of the older version of NRS 11.207(1), that the time limitation for an attorney malpractice action does not start until the "underlying litigation is concluded," which includes the post-conviction appellate process for a criminal defendant). Thus, Nevada was akin to those jurisdictions that focus on the end of the litigation—including the appeal—and the final accumulation of damages to trigger commencement of the statute of limitations for an attorney malpractice claim.

*The ongoing relevance and applicability of the litigation malpractice tolling rule to NRS 11.207(1)*

Although the Legislature amended NRS 11.207(1) in 1997, the discovery rule language to which the litigation malpractice rule has been applied in Nevada caselaw remains. Before it was amended in 1997, NRS 11.207(1) contained language that codified the discovery rule. NRS 11.207(1) (1981) (amended 1997). The *Clark* court applied the litigation malpractice tolling rule to the discovery rule language and the remaining language within the original version of NRS 11.207(1) in determining that an attorney malpractice claim does not accrue until the end of litigation in which the malpractice occurred. 113 Nev. at 951, 944 P.2d at 789-90. That discovery rule, to which the litigation malpractice rule was applied, is still codified in the current version of NRS 11.207(1).

Following the 1997 amendments to NRS 11.207(1), Nevada caselaw has minimally addressed the relationship between the litigation malpractice tolling rule and NRS 11.207(1)'s statute of limitations. Nevertheless, the caselaw that postdates the 1997 amendment indicates the rule's continued relevance and purpose.

In 2002, the court in *Hewitt v. Allen* indicated the litigation malpractice tolling rule's ongoing presence and applicability in Nevada caselaw when it established an exception to the rule. 118 Nev. 216, 43 P.3d 345 (2002). Although the *Hewitt* court did not cite to NRS 11.207(1) in discussing when the cause of action for an attorney malpractice claim accrues, it referenced the discovery rule, which is codified in NRS 11.207(1), when stating that generally such an action "does not accrue until the plaintiff knows, or should know, all the facts relevant to the foregoing elements and damage has been sustained." *Id.* at 221, 43 P.3d at 347-48. The *Hewitt* court discussed the litigation malpractice tolling rule's application to that rule and its rationale that a malpractice action does not accrue until the end of the litigation, including any appeal, because the damages sought by the action may be cured during the litigation's progression. *Id.* at 221, 43 P.3d at 348. The *Hewitt* court, however, crafted "a narrow exception" to the rule, providing that a plaintiff does not give up his right to file an attorney malpractice action when voluntarily dismissing a *futile* appeal from the underlying litigation in which the malpractice occurred. *Id.* at 221-25, 43 P.3d at 348-50. While *Hewitt* did not explicitly address NRS 11.207(1), its recognition of an exception to the litigation malpractice tolling rule and discussion of the rule's basis indicate the enduring presence and approval of the rule.

In 2013, we acknowledged in *Moon* that the litigation malpractice tolling rule may delay the commencement of the two-year statute of limitations in NRS 11.207(1) until the end of the litigation in which the malpractice occurred. *Moon*, 129 Nev. at ___, 306 P.3d at 407. But we concluded that the non-adversarial portions of a bankruptcy proceeding were not litigation for the purpose of the litigation malpractice tolling rule, and therefore they did not toll the two-year statute of limitations under NRS 11.207(1). *Id.* at ___, 306 P.3d at 409-10. As a result, we did not have a procedural posture that permitted us to expressly explain how and why the litigation malpractice tolling rule was still applicable to NRS 11.207(1) in its current composition. *See id.*

In response to the federal district court's certified question, we affirm the ongoing validity and application of the litigation malpractice tolling rule to the two-year statute of limitations in NRS 11.207(1). Although NRS 11.207(1) was amended in 1997, those amendments have not negated the applicability and purpose of the litigation malpractice rule. As NRS 11.207(1) currently exists, the two-year statute of limitations starts when "the plaintiff discovers or through the use of reasonable diligence should have discovered the material facts which constitute the cause of action . . . ." The material facts for an attorney malpractice action include those facts that pertain to the presence and causation of damages on which the action is premised. *See Semenza v. Nev. Med. Liab. Ins. Co.*, 104 Nev. 666, 667-68, 765 P.2d 184, 185 (1988) (stating that an attorney malpractice claim is premised on an "attorney-client relationship, a duty owed to the client by the attorney, breach of that duty, and the breach as proximate cause of the client's damages"). When the litigation in which the malpractice occurred continues to

progress, the material facts that pertain to the damages still evolve as the acts of the offending attorney may increase, decrease, or eliminate the damages that the malpractice caused. *See id.* at 668, 765 P.2d at 185-86. Hence, the need for the litigation malpractice tolling rule remains, as it permits the litigation to end and the damages to become certain before judicial resources are invested in entertaining the malpractice action. *See id.; see also Silvestrone*, 721 So. 2d at 1175 & n.2.

Accordingly, we uphold the applicability of the litigation malpractice rule to the two-year statute of limitations in NRS 11.207(1). So long as the litigation in which the malpractice occurred continues, the damages on which the attorney malpractice action is based remain uncertain.

## CONCLUSION

Therefore, we answer the federal district court's certified question in the affirmative. The two-year statute of limitations in NRS 11.207, as revised by the Nevada Legislature in 1997, is tolled against a cause of action for attorney malpractice, pending the outcome of the underlying lawsuit in which the malpractice allegedly occurred.[7] Having answered this question, we leave the federal district court to apply the law that we have articulated to the facts before it. *See In re Fontainebleau Las Vegas Holdings, L.L.C.*, 127 Nev. ___, ___, 267 P.3d 786, 794-95 (2011)

---

[7]We have considered the appellant's remaining contentions and conclude that they lack merit.

(providing that the certifying federal court decides the facts, and to those facts it applies the law that this court states in its answer).

_____, J.
Saitta

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

SUPREME COURT
OF
NEVADA

(O) 1947A