MARGRET E. HEWITT, Personal Representative of the Estate of NANCY BILLHARTZ, Deceased, Appellant, v. DAVID ALLEN, a Nevada Professional Corporation, dba DAVID ALLEN AND ASSOCIATES; and DAVID M. JONES, Respondents.

No. 35965

April 10, 2002

43 P.3d 345

Maupin, C. J., with whom Agosti, J., agreed, dissented.

*Carl M. Hebert* and *David Hamilton,* Reno, for Appellant.

*Raleigh Hunt McGarry & Drizin* and *Bert E. Wuester Jr.,* Las Vegas, for Respondents.

---

## OPINION

By the Court, BECKER, J.:

This appeal asks whether an action for litigation legal malpractice is automatically deemed abandoned when the plaintiff voluntarily dismisses the appeal taken from the underlying civil action where the legal malpractice is alleged to have occurred. We conclude that a party does not always abandon his or her right to pursue a claim for litigation legal malpractice when he or she voluntarily dismisses a civil appeal. When the appeal of the

underlying action would be fruitless or without merit, the voluntary dismissal of the appeal does not constitute abandonment of the litigation legal malpractice action. We therefore conclude that the district court erred in granting summary judgment on behalf of David Allen and Associates.[1] Accordingly, we reverse the order of the district court and remand for further proceedings consistent with this opinion.

## FACTS

On May 9, 1995, a stolen vehicle operated by a minor without a license sped away from a gas station in Utah. The Utah State Highway Patrol (USHP) set up a roadblock to apprehend the speeding felon. With the stolen vehicle in sight, USHP allowed Nancy Billhartz[2] to pass through the roadblock. The road was closed behind Billhartz. The stolen vehicle hit the roadblock at a speed in excess of 100 miles per hour, causing the driver to lose control and strike Billhartz's vehicle from the rear. Billhartz suffered multiple injuries as a result of the accident.

Billhartz retained respondent David Allen and Associates (DAA) to represent her in the personal injury action. In turn, DAA retained local counsel in Cedar City, Utah (Utah Counsel), to file a complaint for personal injuries. Utah Counsel filed a complaint that named the following government entities as defendants: (1) the State of Utah, Department of Public Safety (DPS); (2) Millard County, Utah; (3) Utah County, Utah; and (4) Beaver County, Utah.

DPS moved to dismiss Billhartz's complaint for failure to comply with the Utah notice of claim statutes. Under the Utah Governmental Immunity Act, Billhartz was required to file notice of her claim with DPS.[3] The notice needed to contain certain

---

[1] David M. Jones is an attorney employed by David Allen and Associates.

[2] Appellant Billhartz died six months after filing her notice of appeal in this case. Appellant's counsel filed a motion in district court substituting her sister, Margret Hewitt, executrix of Billhartz's will, as Billhartz's personal representative. At the time of this appeal, the district court had not ruled on the motion to substitute, which was unopposed. In the interests of simplicity, appellant is referred to as "Billhartz" throughout the course of this opinion.

[3] See Utah Code Ann. § 63-30-12 (1989), which provided, in pertinent part:

> A claim against the state, or against its employee for an act or omission occurring during the performance of his duties, within the scope of employment, or under color of authority, is barred unless notice of claim is filed with the attorney general and the agency concerned within one year after the claim arises, or before the expiration of any extension of time granted under Section 63-30-11, regardless of whether or not the function giving rise to the claim is characterized as governmental.

information.[4] The Utah trial court granted the motion, finding that the notices sent to DPS did not contain all of the required information. Subsequently, the remaining governmental entities were also dismissed for the same reason. Billhartz appealed.

While the Utah appeal was pending, Billhartz filed a complaint in Nevada for legal malpractice against DAA, alleging professional negligence and breach of contract. Billhartz asserted that the notices DAA sent to the governmental agencies were fatally deficient, resulting in the dismissal of her Utah causes of action. Billhartz maintained that Utah courts require strict compliance with the notice requirements, even in instances where the government has actual notice.[5] Billhartz contends that the Utah trial court had no choice and was required to dismiss the claims against the governmental entities as a result of DAA's malpractice.

On November 23, 1999, Billhartz and Utah Counsel attended mandatory mediation. The State of Utah offered to release its claims for costs and attorney fees in return for a full dismissal of the Utah appeal, with prejudice. Utah Counsel recommended accepting this offer and communicated his recommendation to DAA and Billhartz. Utah Counsel opined that there was no basis, under Utah law, for pursuing an appeal. Based upon this recommendation, Billhartz voluntarily dismissed the appeal, as it would have been futile under Utah law.[6]

When Billhartz dismissed the Utah appeal, DAA filed a motion to dismiss the malpractice action, alleging that Billhartz was

[4]Utah Code Ann. § 63-30-11(3)(a) (1991) directed that:

The notice of claim shall set forth:
(i) a brief statement of the facts;
(ii) the nature of the claim asserted; and
(iii) the damages incurred by the claimant so far as they are known.

[5]See *Great West Casualty v. Utah Department of Transportation,* 21 P.3d 240, 243 n.6 (Utah Ct. App. 2001), which concluded that "strict" compliance is still required except in situations involving cases of multiple claimants with standing to sue on the same claim: "[T]he rule requiring 'strict compliance' with the notice requirements of the Governmental Immunity Act does not come from the language of the act itself . . . . Instead, the 'strict compliance' standard was first applied to [the act] by the Utah Supreme Court in *Scarborough v. Granite School District,* 531 P.2d 480, 482 (Utah 1975)." *See also Rushton v. Salt Lake County,* 977 P.2d 1201, 1203 (Utah 1999).

[6]For the first time on appeal, Billhartz argues that DAA was given the option of pursuing the Utah appeal at its expense and that the firm's attorney never warned her that they would argue abandonment. Therefore, Billhartz asserts that DAA should be estopped from claiming abandonment. This court does not consider issues raised for the first time on appeal. "A party may not raise a new theory for the first time on appeal, which is inconsistent with or different from the one raised below." *Powers v. Powers,* 105 Nev. 514, 516, 779 P.2d 91, 92 (1989). Therefore, we decline to consider this issue. *Montesano v. Donrey Media Group,* 99 Nev. 644, 650 n.5, 668 P.2d 1081, 1085 n.5 (1983).

required to prosecute her appeal in the Utah Court of Appeals to a conclusion prior to filing a legal malpractice claim. According to DAA, because she had voluntarily dismissed the Utah appeal, Billhartz had abandoned her malpractice claim. The district court granted DAA's motion to dismiss, treating the motion as one for summary judgment. In its decision, the district court stated:

> Unfortunately, [Billhartz] deprived the Utah appellate court of the opportunity to rule on the matter and effectively abandoned her cause of action when she stipulated to the dismissal of the Utah appeal. The Court finds no genuine issue of material fact on such point.

The district court also found that the opinion of Utah Counsel was insufficient to establish that pursuing the appeal would have been futile.

Billhartz timely appealed, asserting that the district court erred by ruling, as a matter of law, that she abandoned her malpractice claim by voluntarily dismissing the appeal in her underlying Utah action.

## DISCUSSION

Summary judgment should be entered where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[7] A genuine issue of material fact exists where the evidence is such that ''a reasonable jury could return a verdict for the non-moving party.''[8] The proof offered to the lower court must be construed in a light most favorable to the non-moving party.[9] This court conducts a de novo review of an order granting summary judgment.[10] On appeal, this court must determine whether the district court erred in concluding that an absence of genuine issues of material fact justified the granting of summary judgment.[11]

This court has concluded that legal malpractice is ''premised upon an attorney-client relationship, a duty owed to the client by

---

[7]See NRCP 56; see also Dermody v. City of Reno, 113 Nev. 207, 210, 931 P.2d 1354, 1357 (1997) (citing Butler v. Bogdanovich, 101 Nev. 449, 451, 705 P.2d 662, 665 (1985)).

[8]Dermody, 113 Nev. at 210, 931 P.2d at 1357 (citing Valley Bank v. Marble, 105 Nev. 366, 367, 775 P.2d 1278, 1282 (1989)).

[9]Id. (citing Hoopes v. Hammargren, 102 Nev. 425, 429, 725 P.2d 238, 241 (1986)).

[10]See Tore, Ltd. v. Church, 105 Nev. 183, 185, 772 P.2d 1281, 1282 (1989).

[11]See Bird v. Casa Royale West, 97 Nev. 67, 68, 624 P.2d 17, 18 (1981).

the attorney, breach of that duty, and the breach as proximate cause of the client's damages.''[12] As a general rule, a legal malpractice action does not accrue until the plaintiff knows, or should know, all the facts relevant to the foregoing elements and damage has been sustained.[13] In the context of litigation malpractice, that is, legal malpractice committed in the representation of a party to a lawsuit, damages do not begin to accrue until the underlying legal action has been resolved.[14] Thus, when the malpractice is alleged to have caused an adverse ruling in an underlying action, the malpractice action does not accrue while an appeal from the adverse ruling is pending. The general rule regarding legal malpractice actions and appeals is based on the rationale that ''[a]pparent damage may vanish with successful prosecution of an appeal and ultimate vindication of an attorney's conduct by an appellate court.''[15]

Billhartz argues that the general rule should not apply when litigants voluntarily dismiss their appeals after determining that appeal is futile. Billhartz contends that *Semenza v. Nevada Medical Liability Insurance Co.*[16] does not apply to cases involving the voluntary dismissal of a futile appeal. We agree. In *Semenza,* we concluded that when malpractice is predicated upon actions involving the handling of litigation, a cause of action for malpractice could not accrue until the ''underlying cause of action has been finally resolved.''[17] A voluntary dismissal is a final resolution. Thus, *Semenza* is not controlling.

DAA argues that we should establish a bright-line rule requiring litigants who file appeals in the underlying action to pursue those appeals to their conclusion before proceeding with a legal malpractice action. DAA asserts that this rule will promote judicial economy and prevent the remote or speculative litigation discussed in *Semenza.* DAA contends that once an appeal is filed, a court should make the final determination about the validity of the appeal, thus alleviating the speculation that the damages were proximately caused by judicial error rather than attorney misconduct.

---

[12]*Semenza v. Nevada Med. Liability Ins. Co.,* 104 Nev. 666, 667-68, 765 P.2d 184, 185 (1988) (citing *Warmbrodt v. Blanchard,* 100 Nev. 703, 706-07, 692 P.2d 1282, 1285 (1984)).

[13]*Id.* at 668, 765 P.2d at 185-86 (citing *Jewett v. Patt,* 95 Nev. 246, 247, 591 P.2d 1151, 1152 (1979)).

[14]*Kopicko v. Young,* 114 Nev. 1333, 971 P.2d 789 (1998).

[15]*Semenza,* 104 Nev. at 668, 765 P.2d at 186 (citing *Amfac Distribution Corp. v. Miller,* 673 P.2d 795, 796 (Ariz. Ct. App. 1983)).

[16]*Id.* at 666, 765 P.2d at 184.

[17]*Id.* at 668, 765 P.2d at 185.

Billhartz contends that we should treat a decision to voluntarily dismiss an appeal in the same way as a decision not to pursue an appeal. If an appeal would be a futile gesture, that is, the appeal would most likely be denied, then litigants should be able to forgo an appeal, or dismiss a pending appeal, without abandoning their legal malpractice actions. We agree.

In cases where no appeal from an adverse ruling was filed, the defendants in the legal malpractice action are able to assert, as an affirmative defense, that the proximate cause of the damages was not the attorney's negligence, but judicial error that could have been corrected on appeal. This issue is commonly raised under theories of abandonment or failure to mitigate damages, but can also be asserted as part of a claim that the malpractice action is premature.[18] Moreover, because the issue is raised in the context of an affirmative defense, the attorney defendant has the burden of proof to establish that an appeal would have been successful.[19] Finally, whether an appeal is likely to succeed is a question of law to be determined by the trial court.[20] We believe the same reasoning should apply to the voluntary dismissal of an appeal.

---

[18]See 3 Ronald E. Mallen & Jeffrey M. Smith, *Legal Malpractice* §§ 21.5, 21.12 (5th ed. 2000), concluding that the defenses of waiver and abandonment arise from the unilateral acts of the client:

> If the error appealed is charged to the lawyer, then an appeal will resolve whether the lawyer or the trial court erred. Even if the appeal is abandoned, the defense remains, presenting an issue of law that would be the same even if the client did not appeal. If the appeal provided the opportunity for the client to mitigate damages, then the failure to appeal concerns whether the abandonment of the effort was reasonable under the circumstances.

*See also id.* § 21.16 (regarding compromise with a third party as a partial defense in the reduction of damages where a client settled with or released a third party involved in the underlying claim or cause of action); Steven K. Ward, *Developments in Legal Malpractice Liability,* 31 S. Tex. L. Rev. 121 (1990). *See generally Lenahan v. Russell L. Forkey, P.A.,* 702 So. 2d 610, 611 (Fla. Dist. Ct. App. 1997) (concluding that "circumstances in which a client's subsequent actions constitute an abandonment of a legal malpractice claim, as a matter of law, are very narrow" in a case involving the voluntary dismissal of the underlying suit); *Segall v. Segall,* 632 So. 2d 76, 78 (Fla. Dist. Ct. App. 1993) (involving dismissal of an appeal for failure to comply with local discovery rules).

[19]*See generally* 3 Mallen & Smith, *supra* note 18, §§ 21.1-21.20 (regarding defenses which can reduce the amount of damages for which an attorney may be liable in a malpractice action); *Pennsylvania Ins. Guar. Ass'n v. Sikes,* 590 So. 2d 1051, 1052-53 (Fla. Dist. Ct. App. 1991). The *Sikes* court stated:

> A reversal of a trial court's order that denies an attorney the opportunity to cure a nonprejudicial defect and enters a judgment for the opposing side because of the alleged defect, determines, essentially, that there was judicial error rather than legal malpractice.

590 So. 2d at 1052.

[20]*See generally Eastman v. Flor-Ohio, Ltd.,* 744 So. 2d 499 (Fla. Dist. Ct. App. 1999); *Sikes,* 590 So. 2d 1051.

We concur with the analysis of this issue set forth by the Florida Court of Appeals in *Eastman v. Flor-Ohio, Ltd.*[21] That court concluded, as a matter of law, that a voluntary dismissal of a pending appeal, following a settlement agreement, did not bar the plaintiff's right to pursue a legal malpractice action.

The facts of *Eastman* are very similar to the facts of the case at hand. In *Eastman,* a mobile home park owner hired a law firm to effectuate rental rate increases to the homeowners on its lots.[22] However, the notices sent by the firm failed to comply with Florida law.[23] The homeowners brought suit, and the court entered summary judgment in their favor, citing the unlawful and invalid notice by the park owner as its reasoning.[24] After an appeal was filed, the park owner entered into a settlement with the homeowners.[25] Upon settlement, the park owner voluntarily dismissed its pending appeal.[26] However, when the park owner filed a legal malpractice action against the firm, the firm argued that the park owner had abandoned its legal malpractice claim by voluntarily dismissing its appeal.[27]

The Florida appellate court concluded that the park owner's actions did not constitute abandonment.[28] The court refused to adopt the bright-line rule that the filing and prosecution of an unsuccessful appeal in a related case was a condition precedent to the subsequent filing of a legal malpractice claim.[29] The court also noted that Florida law at the time required that the notice requirements be strictly construed and that the notice to the homeowners was statutorily required.[30] The court concluded that the trial court had properly entered summary judgment in the underlying action and there was no reason to believe the summary judgment would have been reversed on appeal.[31] Therefore, the court concluded that the park owner did not abandon his right to pursue a claim of legal malpractice by dismissing his appeal.[32] Finally, the Florida court concluded that serious policy reasons support not liberalizing the abandonment theory:

---

[21]744 So. 2d 499.

[22]*Id.* at 500.

[23]*Id.* at 501.

[24]*Id.*

[25]*Id.*

[26]*Id.*

[27]*Id.*

[28]*Id.* at 502.

[29]*Id.* at 503.

[30]*Id.* at 504.

[31]*Id.*

[32]*Id.*

Before concluding our discussion of the abandonment theory, we comment on the serious policy reasons which militate against liberalizing the abandonment theory beyond the narrow parameters set forth in *Sikes*.[33] Perhaps the least compelling reason is the negative effect such a ruling would have on the work load of the appellate courts. If we were to issue a ruling that appeals are required in all cases in order to preserve the client's right to subsequently pursue a claim for legal malpractice, meritiess [sic] appeals would be prosecuted by litigants solely for the purpose of preserving their right to later assert a malpractice claim. Of course, such a ruling would also discourage parties from settling pending appeals and would be inconsistent with the party's legal duty to mitigate their damages.[34]

A party does not abandon his right to pursue a claim of legal malpractice against counsel by voluntarily dismissing his appeal from an adverse judgment where the judgment is not likely to be reversed due to a finding of judicial error. In so doing, we adopt, as a narrow exception to the general rule regarding legal malpractice claims, the rationale of *Eastman*.[35]

In this case, as in *Eastman,* counsel for Billhartz failed to strictly adhere to Utah's statutorily required notice provisions prior to filing her personal injury claim in Utah. As a result, the Utah trial court dismissed Billhartz's suit. In the opinion of Utah Counsel, the pursuit of the appeal would have been futile because Utah law requires strict compliance with the notice statutes, and the Utah case law cited by Billhartz certainly indicates there is a basis for Utah Counsel's conclusion that the order of dismissal would not have been reversed on appeal. The district court erred in granting summary judgment to DAA because, under the existing Utah case law, the Utah appeal was not likely to succeed and, as a matter of law, Billhartz's voluntary dismissal did not constitute abandonment.

## CONCLUSION

We conclude that a party does not abandon his right to pursue a claim of legal malpractice by voluntarily dismissing his appeal from an adverse judgment where the judgment is not likely to be reversed due to a finding of judicial error. Accordingly, we reverse

---

[33]*Pennsylvania Ins. Guar. Ass'n v. Sikes,* 590 So. 2d 1051 (Fla. Dist. Ct. App. 1991).

[34]*Eastman,* 744 So. 2d at 504.

[35]*Id.*

the district court's order granting summary judgment and remand for further proceedings consistent with this opinion.

YOUNG, SHEARING, ROSE and LEAVITT, JJ., concur.

MAUPIN, C. J., with whom AGOSTI, J., agrees, dissenting:

The majority correctly states the general rule that damages do not legally begin to accrue in the context of litigation-based legal malpractice until the underlying action has been resolved. In my view, once an appeal is commenced in the underlying matter, that matter is not "resolved" until the appeal is concluded on its merits. I would therefore adopt a bright-line rule requiring a litigant who files an appeal in an underlying action to pursue the appeal to conclusion before proceeding with a malpractice complaint.

I realize that the actual filing of an appeal in the underlying action is not a prerequisite to standing to commence malpractice proceedings. However, the lodging of an appeal is generally, or at the very least should be, based upon a considered decision to pursue the matter further. Once that decision is made, the question of judicial error should be pursued in that forum. In this way, whether the client's damages were caused by judicial error rather than malpractice is determined prior to the institution of malpractice proceedings. Because the client is not required to pursue an appeal in the underlying matter to gain standing to commence a malpractice action, the rule I suggest here would not, in any way, force litigants with colorable malpractice claims to file and prosecute to conclusion meritless appeals.

As noted, the approach I suggest eliminates the necessity of litigating, in the subsequent malpractice action, a defense that the client's damages were the result of judicial error rather than malpractice. This is important because that determination will be more objective, the focus in the underlying case primarily being the legal issue itself, while the focus in the subsequent malpractice action may be altered by the *fait accompli* that the underlying case has been lost.

I would affirm the judgment.